The Honorable Richard A. Jones

UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF WASHINGTON
AT SEATTLE

| | |
|---|---|
| UNITED STATES OF AMERICA, | NO. CR17-322 RAJ |
| Plaintiff, | |
| vs. | GOVERNMENT'S TRIAL BRIEF |
| RENE BORROEL-LOPEZ, | |
| Defendant. | TRIAL DATE:  March 5, 2018 |

The United States, by Annette L. Hayes, United States Attorney for the Western District of Washington, Assistant United States Attorney Katheryn Frierson and Special Assistant United States Attorney Benjamin Diggs, submits this trial brief.  Trial is scheduled for March 5, 2018.

## I.  CHARGES AND ANTICIPATED TRIAL LENGTH

Defendant is currently charged with two counts:  (Count 1) Possession of Methamphetamine with Intent to Distribute, in violation of Title 21, United States Code Section 841(a)(1), (b)(1)(A); and (Count 2) Alien in Possession of a Firearm, in violation of Title 18 United States Code, Section 922(g)(5). The United States, however, will dismiss Count 2, Alien in Possession of a Firearm, and will proceed to trial on the Count 1, Possession of Methamphetamine with Intent to Distribute, only.[1]

---

[1] The government does not intend to introduce any testimony regarding the searches, following defendant's arrest, of Defendant's residence at 25856 34th Avenue S, Kent, WA, or the Chevrolet Silverado parked at that residence, nor

1   The government expects its case-in-chief to last approximately three trial days.

2   The government will call approximately eight to ten witnesses.  These witnesses will

3   include law enforcement officers, a cooperating co-conspirator, and a DEA chemist.

4   AUSA Katheryn Frierson will conduct voir dire and will give the closing argument.

5   SAUSA Benjamin Diggs will give the opening statement and rebuttal argument.

6                    **II.      SUMMARY OF THE FACTS**

7          On December 11, 2017, Drug Enforcement Administration (DEA) Agents arrested

8   a known methamphetamine dealer, Ronnie Cruickshank (RC).  RC had previously sold

9   methamphetamine on two occasions, in October and November 2017, to an undercover

10  (UC) task force officer with the DEA in controlled transactions.  During the second

11  controlled undercover buy, on November 15, 2017, RC told the UC that he was waiting

12  for his "Mexican" source of supply.  As part of that transaction, DEA Agents set up

13  surveillance on RC and observed him meet with Defendant Rene Borroel-Lopez in the

14  parking lot of the McDonald's at the Auburn Outlet Mall.  Borroel-Lopez approached and

15  got into RC's vehicle, remained there briefly, and then returned to his own vehicle.

16  Immediately after this meeting, RC drove over to the Wal-Mart store adjacent to the

17  Outlet Mall and there sold one pound of methamphetamine to the UC.  After his meeting

18  with RC, Borroel-Lopez was followed by law enforcement to a residence at 25856 34th

19  Ave S in Kent, Washington.

20         Following his December 11, 2017 arrest, and after waiving his Miranda rights, RC

21  confirmed to agents that Defendant Borroel-Lopez was his source of supply.  RC stated

22  that he purchased methamphetamine from Borroel-Lopez for $3700.00 per pound if he

23  has the money up front or $3800.00 per pound if the drugs are fronted.  RC added that he

24  had been fronted two pounds of methamphetamine and that he presently owed Borroel-

25  Lopez the money for those drugs.

26

27

28  will the government introduce any evidence recovered during those searches.  As a result, defendant's motions to
    suppress the evidence from the search of his house and the Silverado (Dkt. 20), are moot.  See Section V, supra.

GOVERNMENT'S TRIAL BRIEF - 2
*U.S. v. Borroel-Lopez*, CR17-322RAJ

1   RC agreed to text Borroel-Lopez, telling him that RC had Borroel-Lopez's money
2   but that he wanted another two pounds, which he called "Tacos" according to code the
3   two had used in the past.  (RC's phone text messages confirm prior texts with phone
4   numbers RC stated as belonging Borroel-Lopez discussing "tacos").  Borroel-Lopez
5   replied to the text message and asked RC if he also wanted some "Black," a reference for
6   heroin.  RC texted Borroel-Lopez back that he did.  RC and Borroel-Lopez arranged a
7   time and location to meet.

8       Following that exchange, DEA Agents set up surveillance on Borroel-Lopez's
9   residence at 25856 34th Ave S in Kent, WA.  At approximately 8:40 p.m., they observed
10  him exit the residence and get into a 2007 GMC Yukon (registered to RENE Borroel-
11  Lopez at 25856 34th Ave S in Kent, Washington), with Washington license plate number
12  BEP6721.  Agents followed Borroel-Lopez to the meeting location that Borroel-Lopez
13  had picked, a Taco Bell at 322 Washington Ave S, Kent, Washington.  The only stop
14  Borroel-Lopez made was to drop a woman (later determined to be his wife) at a store.
15  When Borroel-Lopez's vehicle turned towards the Taco Bell, it was stopped by law
16  enforcement.

17      When stopped, a package of suspected heroin was found on Borroel-Lopez's
18  person pursuant to a search incident to arrest.  Pursuant to a search based on reasonable
19  suspicion resulting from the text message exchange between RC and Borroel-Lopez and
20  Borroel-Lopez's arrival at the Taco Bell, approximately two pounds (940 grams gross
21  weight) of suspected methamphetamine were found in a black bag in the rear passenger
22  compartment of the GMC Yukon.  The presence of these drugs was consistent with the
23  text message conversations between Borroel-Lopez and RC earlier in the evening.
24  Though there was a child in the truck at the time of the stop, Borroel-Lopez was the only
25  adult in the vehicle.

26

27

28

### III.   THE OFFENSE

**A.   Possession with Intent to Distribute Methamphetamine**

To prove that Borroel-Lopez possessed a controlled substance that he intended to distribute, "the Government must prove beyond a reasonable doubt that the defendant (1) knowingly, (2) possessed an illegal drug, (3) with the intent to distribute it." *United States v. Delgado*, 357 F.3d 1061, 1065 (9th Cir. 2004).   To "possess with intent to distribute" means to possess with intent to deliver or transfer possession of a controlled substance to another person, with or without any financial interest in the transaction. *See* Ninth Circuit Model Jury Instruction 9.15.   "Possession may be either actual or constructive, with the latter concept encompassing a defendant's power to exercise dominion and control over the narcotics as well as his or her participation in a 'joint venture' to possess a controlled substance." *Delgado*, 357 F.3d at 1065; *United States v. Cervantes*, 219 F.3d 882, 893 (9th Cir. 2000).  Intent to distribute may be proved directly through witness testimony or through physical evidence.  The quantity, purity, and resale value of drugs are sufficient for a jury to infer knowledge and intent to distribute. *See, e.g., United States v. Johnson*, 357 F.3d 980, 984 (9th Cir. 2004) ("A jury can infer intent to distribute from possession of a large quantity of drugs."); *United States v. Smith*, 832 F.2d 1167, 1170 (9th Cir. 1987)) ("A jury may infer the intent to distribute a controlled substance from quantity alone.").

**B.   Drug Quantity Proof**

To trigger the increased penalty enhancements in Section 841(b)(1) corresponding to certain drug quantities, the government must prove beyond a reasonable doubt the amount of controlled substances involved in particular offenses. *See Alleyne v. United States,* 133 S. Ct. 2151, 2155 (2013)*; Apprendi v. New Jersey*, 530 U.S. 466, 490 (2000); *United States v. Velasco Heredia*, 319 F.3d 1080, 1086 (9th Cir. 2003) (stating that after *Apprendi*, the statutory mandatory minimum sentences under 21 U.S.C. § 841 do not apply "until the jury, or the court in a bench trial, finds beyond a reasonable doubt [ ] the quantity involved in the violation.").

GOVERNMENT'S TRIAL BRIEF - 4
*U.S. v. Borroel-Lopez*, CR17-322RAJ

UNITED STATES ATTORNEY
700 STEWART STREET, SUITE 5220
SEATTLE, WASHINGTON 98101
(206) 553-7970

# IV.   LEGAL ISSUES

**B.   Admissibility of Defendant's Own Statements.**

The United States intends to introduce various statements made by the defendant, primarily in the form of text messages located on cell phones seized from the defendant, and from his co-conspirator, RC.  These statements include statements made to RC relating to drug transactions, including the transaction at which he was arrested, as well as statements to others regarding drug dealing. Statements by a defendant are not hearsay when offered by the government against the speaker.  Fed. R. Evid. 801(d)(2).

However, the converse is not true.  An out-of-court statement of a declarant offered by the declarant on his own behalf is inadmissible hearsay because, among other things, it is not a statement by a party-opponent.  *See United States v. Ortega*, 203 F.3d 675, 682 (9th Cir. 2000); *see also Williamson v. United States*, 512 U.S. 594, 600 (1994) (the hearsay rule excludes self-exculpatory statements because such statements "are exactly the ones which people are most likely to make even when they are false").  Borroel-Lopez gave a number of statements to law enforcement on December 11, 2017, some as part of a recorded interview, and some prior to that, after his arrest and advisement and waiver of Miranda warnings.  The defense has not moved to suppress any of these statements, and there has been no allegation that he did not understand his rights, or that his statements were involuntary.  Accordingly, those admissions are admissible.

**C.   Admissibility of Co-Conspirator Statements**

The government will seek to introduce evidence of conversations between defendant's co-conspirator, RC, and the undercover agent setting up drug transactions, and conversations between RC and Borroel-Lopez.

Co-conspirator statements are admissible under Federal Rule of Evidence 801(d)(2)(E), as "a statement by a coconspirator of a party during the course and in furtherance of the conspiracy."  Pursuant to this rule, a statement made by a co-conspirator is admissible if the United States establishes, by a preponderance of the evidence, that a conspiracy existed at the time of the statement and that the statement was

GOVERNMENT'S TRIAL BRIEF - 5
*U.S. v. Borroel-Lopez*, CR17-322RAJ

UNITED STATES ATTORNEY
700 STEWART STREET, SUITE 5220
SEATTLE, WASHINGTON 98101
(206) 553-7970

made during and in furtherance of the conspiracy. *Bourjaily v. United States*, 483 U.S. 171, 175 (9th Cir. 1987); *United States v. Fleishman*, 684 F.2d 1329, 1337 (9th Cir. 1982). The statements themselves may help establish their admissibility under 801(d)(2)(E). *Bourjaily*, 483 U.S. at 175; *United States v. Schmidt*, 881 F.2d 608, 612 (9th Cir. 1989).

As to the reliability of the statement, the Supreme Court has held that the co-conspirator exception to the hearsay rule is a "firmly rooted exception" and no further proof of indicia of reliability is necessary for the admission of a coconspirator's statement. *Bourjaily*, 483 U.S. at 182 183; *United States v. Smith*, 893 F.2d 1573, 79 (9th Cir.) ("the confrontation clause does not require a court to embark on an independent inquiry into the reliability of statements that satisfy the requirements of Rule 801(d)(2)(E).") (internal citation and quotation omitted).

These statements include statements made to keep a conspirator abreast of a co-conspirator's activities, or to induce continued participation in a conspiracy, or to allay the fears of a co-conspirator in furtherance of a conspiracy, or statements made to reassure the continued existence of the conspiracy. *See United States v. Mason*, 658 F.2d 1263, 1270 (9th Cir. 1981). The focus is on the declarant's intent in making the statement, not on its actual effect of promoting the goals of the conspiracy. *United States v. Zavala-Serra*, 853 F.2d 1512, 1516 (9th Cir. 1988); *United States v. Layton*, 720 F.2d 548, 557 n.5 (9th Cir. 1983).

Additionally, it is not necessary that the statement be made to another member of the conspiracy for it to come under Rule 801(d)(2)(E). *See Zavala Serra*, 853 F.2d at 1516 (statements to government informant); *United States v. Taylor*, 802 F.2d 1108, 1117 (9th Cir. 1986) (statements to undercover FBI agent); *United States v. Echeverry*, 759 F.2d 1451, 1457 (9th Cir. 1985) (statements to undercover DEA agent); *United States v. Smith*, 623 F.2d 627, 631 (9th Cir. 1980) (statement to informant).

Finally, the Supreme Court's decision in *Crawford v. Washington*, 541 U.S. 36, 56 (2004), has no effect on the admissibility of statements by co-conspirators in furtherance

GOVERNMENT'S TRIAL BRIEF - 6
*U.S. v. Borroel-Lopez*, CR17-322RAJ

UNITED STATES ATTORNEY
700 STEWART STREET, SUITE 5220
SEATTLE, WASHINGTON 98101
(206) 553-7970

of a conspiracy.  Specifically, the Supreme Court found that the statements of co-conspirators are not made with the expectation that they will be used at trial, and therefore there is no Sixth Amendment violation by an inability of the defendant to cross examine the co-conspirators who made the statements.  *Id.  See also United States v. Larson*, 460 F.3d 1200. 1213 (9th Cir. 2006) (Ninth Circuit recognizing that the admission of co-conspirator statements do not violate the Sixth Amendment).

**D.    Evidence Relating to a Person Not Charged in the Indictment**

It has long been established that all the parties to a conspiracy need not be named or charged in the Indictment.  *Ng Pui Yu v. United States*, 352 F.2d 626, 633 (9th Cir. 1965) ("It is not necessary, to sustain a conviction for a conspiracy, that co-conspirators be charged").  The evidence will establish that at least one other person, namely RC, was involved in the conspiracy but has not been charged together with defendant, but was instead charged in a related case.  Acts and declarations of persons not named in the indictment made in furtherance of the conspiracy are admissible as to all named conspirators.  *See id.*

**E.    Other Out-of-Court Statements Offered for Non-Hearsay Purposes.**

"Hearsay is a statement, other than one made by the declarant while testifying at the trial or hearing, offered in evidence to prove the truth of the matter asserted."  Fed. R. Evid. 801(c).  The admission of hearsay into evidence is generally proscribed by Rule 802.  When it is relevant that an out of court statement was made, however, and the statement is offered exclusively to prove that it was made, it is not hearsay and is therefore admissible.  *See Williams v. United States*, 458 U.S. 279 (1982).  That is because statements not offered for their truth are not hearsay.  Fed. R. Evid. 801(c).

In certain instances, the government may offer out-of-court statements not to prove the truth of the matters asserted, but merely to explain information possessed by, and the subsequent actions of, the investigative agents, law enforcement officers, and other witnesses.  Furthermore, additional out-of-court statements provide necessary context in order to comprehend the admissible statements of Defendant and his co-

GOVERNMENT'S TRIAL BRIEF - 7
*U.S. v. Borroel-Lopez*, CR17-322RAJ

UNITED STATES ATTORNEY
700 STEWART STREET, SUITE 5220
SEATTLE, WASHINGTON 98101
(206) 553-7970

1   conspirators.  Because these statements will not be offered for the truth of the matter
2   asserted, the statements would not constitute hearsay as defined by Rule 801(c).  *See*
3   *United States v. Mitchell*, 502 F.3d 931, 969 (9th Cir. 2007) (no error in allowing
4   investigator testify about out-of-court statements from an informant that caused him to go
5   to a certain location); *United States v. Munoz*, 233 F.3d 1117, 1134 (9th Cir. 2000) (no
6   error in allowing attorney to testify about out-of-court conversations with Michigan State
7   investigators that caused him to send letter requesting that investment company sales
8   personnel suspend investment sales); *United States v. Brown*, 923 F.2d 109, 111 (8th Cir.
9   1991) (out-of-court statement is not hearsay if offered for the limited purpose of
10  explaining why a police investigation was undertaken).

11  **F.     Rule 404(b) Evidence**

12          The government has advised the defense that it intends to introduce certain
13  evidence pursuant to Federal Rule of Evidence 404(b).  Specifically, the government will
14  offer testimony from RC related to the course of RC's relationship with the defendant,
15  and the defendant's history providing RC drugs, including the defendant's offer of other
16  drugs for sale, such as cocaine and heroin, in addition to methamphetamine.  The
17  government intends to elicit this evidence during its case-in-chief at trial, and to make
18  references to it during opening statement. Accordingly, the government seeks a pre-trial
19  ruling from the Court regarding the admissibility of this evidence.

20          The government believes that this evidence is admissible under evidentiary
21  doctrines other than Rule 404(b), including because it is inextricably intertwined with the
22  current charges against defendant.  It is the government's position that such evidence is
23  also admissible under Rule 404(b) to show Defendant's motive, opportunity, intent,
24  preparation, plan, and knowledge.  It may also be admissible on other grounds, including
25  to show identity and lack of mistake or accident.

26          The Ninth Circuit employs "a four-part test to determine the admissibility of Rule
27  404(b) evidence." *United States v. Ramos-Atondo*, 732 F.3d 1123, 1124 (9th Cir. 2013).
28  "Such evidence may be admitted if: (1) the evidence tends to prove a material point; (2)

GOVERNMENT'S TRIAL BRIEF - 8
*U.S. v. Borroel-Lopez*, CR17-322RAJ

UNITED STATES ATTORNEY
700 STEWART STREET, SUITE 5220
SEATTLE, WASHINGTON 98101
(206) 553-7970

1   the other act is not too remote in time; (3) the evidence is sufficient to support a finding

2   that defendant committed the other act; and (4) (in certain cases) the act is similar to the

3   offense charged." *Id.* Using this four-part analysis, the Ninth Circuit has "consistently

4   held that evidence of a defendant's prior possession or sale of narcotics is relevant under

5   Rule 404(b) to issues of intent, knowledge, motive, opportunity, and absence of mistake

6   or accident in prosecutions for possession of, importation of, and intent to distribute

7   narcotics." *United States v. Vo*, 413 F.3d 1010, 1018 (9th Cir. 2005) (citing cases).   The

8   defendant's prior drug trafficking with RC satisfies all four prongs of the admissibility

9   test: it proves the material point of defendant's knowledge and intent; it was not remote

10  in time, instead occurring in the weeks and months before the charged conduct; it will be

11  presented through sufficient evidence, namely the testimony of a buyer and co-

12  conspirator; and it is similar to the conduct charged in that it also involves the defendant

13  supplying RC with drugs, including methamphetamine.  This evidence is admissible.

14  **G.    Transcripts**

15       Some of the government's evidence will come in via consensually recorded phone

16  or in-person communications between RC and the undercover officer.  These recordings

17  are in English.

18       The government has prepared transcripts of all of the recordings it intends to use at

19  trial.  Drafts of the transcripts have been provided to defense counsel, and the final

20  versions will be provided in the government's exhibit notebooks.  Complaints or

21  objections regarding the accuracy of transcripts go to weight not admissibility.

22       The Ninth Circuit approves the use of transcripts of properly admitted recordings

23  to aid the jury in understanding the recordings.  *United States v. Rinn*, 586 F.2d 113 (9th

24  Cir. 1978); *United States v. Taghipour*, 964 F.2d 908 (9th Cir. 1992); *United States v.

25  Pena Espinoza*, 47 F.3d 356 (9th Cir. 1995); *United States v. Armijo*, 5 F.3d 1229 (9th

26  Cir. 1993).  The Ninth Circuit also has approved of the use of transcripts during

27  deliberations, under certain circumstances.  *United States v. Turner*, 528 F.2d 143, 168

28  (9th Cir. 1975); *United States v. Fuentes Montijo*, 68 F.3d 352, 353 55 (9th Cir. 1995).

GOVERNMENT'S TRIAL BRIEF - 9
*U.S. v. Borroel-Lopez*, CR17-322RAJ

UNITED STATES ATTORNEY
700 STEWART STREET, SUITE 5220
SEATTLE, WASHINGTON 98101
(206) 553-7970

1    The jury should be instructed that the recordings themselves are the evidence, and

2  the transcripts are only a guide.  *United States v. Turner*, 528 F.2d 143, 167 68 (9th Cir.

3  1975).  The standard rule for resolving disputes between an audiotape and a transcript is

4  for the jury to refer to the tape as evidence and not the transcript.

5  **H.    Photographs**

6    The government expects to offer photographs of the defendant's November 15

7  meeting with RC (before the sale to the undercover officer), as well as photographs taken

8  at the time of his arrest. The photos are admissible. *See United States v. Brannon*, 616

9  F.2d 413, 416 (9th Cir. 1980) (evidence that photographs accurately depict scene

10  provides a sufficient foundation for admission under FRE 901(a)).  The photographs may

11  be authenticated by a witness who testifies they are accurate representations of what they

12  are intended to depict.  *See* FRE 901(b)(1).

13  **I.    Admissibility of Summary Charts**

14    The investigation and prosecution of this case has involved review of voluminous

15  records of the contents of the cellular telephone seized from RC, as well as the three

16  celluar phones seized from the defendant's truck at the time of his arrest.  Accordingly,

17  the government may present evidence in the form of summary charts that excerpt only the

18  relevant text messages exchanged between RC, on the one hand, and the undercover

19  officer or defendant Borroel-Lopez, on the other.  The government has provided the

20  defense with all the underlying materials, and will provide drafts of each of these

21  summary charts.

22    Federal Rule of Evidence 1006 states that: "[t]he proponent may use a summary,

23  chart, or calculation to prove the content of voluminous writings, recordings, or

24  photographs that cannot conveniently be examined in court."  The proponent of a

25  summary under Rule 1006 must establish that the underlying materials cannot be

26  conveniently examined in court, and that they are admissible at trial, as conditions

27  precedent to introduction of the summary into evidence. *Amarelu v. Connell*, 102 F.3d

28  1494, 1516 (9th Cir. 1997); *United States v. Meyers*, 847 F.2d 1408, 1412 (9th Cir.

GOVERNMENT'S TRIAL BRIEF - 10
*U.S. v. Borroel-Lopez*, CR17-322RAJ

1988); United States v. Johnson, 594 F.2d 1253, 1257 (9th Cir. 1979).  The proponent of a summary also must establish that the underlying documents were made available to the opposing party for inspection.  *Paddack v. Dave Christensen, Inc.*, 745 F.2d 1254, 1259 (9th Cir. 1984).  Summaries must fairly represent the underlying documents, and their admission into evidence is left to the trial court's discretion.  *Davis & Cox v. Summa Corp.*, 751 F.2d 1507, 1516 (9th Cir. 1985), superseded on other grounds by *Northrup Corp. v. Triad Intern. Mktg., SA*, 842 F.2d 1154 (9th Cir. 1988).

All of these requirements are met in this case.  If the government were to publish the entire download, or "dump" of each seized telephone, the jury would be faced with reviewing hundreds of pages of documents, many of them with little relevance to the issues of this case.  The government has provided the defense with copies, or access to copies, of all of the underlying records.[2]  The summary testimony and charts are accurate and non-prejudicial.

Rule 1006 does not require that it literally be impossible for the fact finder to examine the underlying records before a summary may be admitted.  *United States v. Stephens*, 779 F.2d 232, 238-39 (5th Cir. 1985); *United States v. Scales*, 594 F.2d 558, 562 (6th Cir. 1979).  Rule 1006 contemplates that summaries of voluminous records may be used without introducing each and every underlying document into evidence.  *Scales*, 594 F.2d at 562.  Furthermore, the fact that some of the underlying documents are already in evidence does not mean that they can be "conveniently examined in court."  *United States v. Stephens*, 779 F.2d at 239; *United States v. Lemire*, 720 F.2d 1327, 1347 (D.C. Cir. 1983).

---

[2] In the case of RC's phone, the government made clear to defense counsel that, due to privacy concerns, it was not willing to provide the entire "dump" of RC's phone to the defense without a protective order, but would make the contents of that phone, in their entirety, available to defense counsel either at the U.S. Attorney's Office, or via a protective order.  As of February 23, 2018, defense counsel has not sought access through either method.

GOVERNMENT'S TRIAL BRIEF - 11
*U.S. v. Borroel-Lopez*, CR17-322RAJ

UNITED STATES ATTORNEY
700 STEWART STREET, SUITE 5220
SEATTLE, WASHINGTON 98101
(206) 553-7970

1    The Ninth Circuit has affirmed the admission as substantive evidence of a wide

2    variety of summary charts pursuant to Rule 1006 where (as in this case) such charts are

3    based on the sponsoring witnesses' out-of-court review of voluminous evidence.  *See,*

4    *e.g., United States v. Shirley*, 884 F.2d 1130, 1133 (9th Cir. 1989) (DEA agent presented

5    chart summarizing information about telephone calls made to and from phones associated

6    with defendants, relying on review of phone records, rental records, jail records, and

7    other information); *United States v. Meyers*, 847 F.2d 1408, 1412 (9th Cir. 1988) (chart

8    summarizing phone records and law enforcement surveillance reports); *United States v.*

9    *Catabran*, 836 F.2d 453, 456-458 (9th Cir. 1988) (charts summarizing voluminous

10   computer printouts and inventory records in bankruptcy fraud prosecution); *United States*

11   *v. Gardner*, 611 F.2d 770, 776 (9th Cir. 1980) (IRS agent presented chart summarizing

12   assets, liabilities, and expenditures of defendant in tax prosecution).

13   Under the cited authority, the government respectfully requests that these

14   summaries and charts be ruled substantively admissible.

15   **J.    Experts**

16   The United States is prepared to present in its case-in-chief at least two experts,

17   and has provided notice to the defense of their identity and the subject matter of their

18   testimony.  Under Federal Rule of Evidence 702, "[i]f scientific, technical, or other

19   specialized knowledge will assist the trier of fact to understand the evidence or to

20   determine a fact in issue, a witness qualified as an expert by knowledge, skill, experience,

21   training, or education, may testify thereto."  Expert testimony must be both (1) relevant,

22   that is, it must have a valid connection to the pertinent inquiry at trial, and (2) reliable,

23   that is, it must be trustworthy.  Each of the government's proposed expert witnesses are

24   experts in their respective chosen fields, and the government submits that their testimony

25   will meet the reliability requirements set forth in *Daubert*.

26   The United States is prepared to offer testimony of a DEA Forensic Chemist,

27   Emily Oblath, who will testify generally about the science, technology and procedures for

28   drug analysis, and about the results of her work testing the drug exhibit in this case,

GOVERNMENT'S TRIAL BRIEF - 12
*U.S. v. Borroel-Lopez*, CR17-322RAJ

UNITED STATES ATTORNEY
700 STEWART STREET, SUITE 5220
SEATTLE, WASHINGTON 98101
(206) 553-7970

including the chemical composition of the substance seized.  The United States will also offer the testimony of DEA Technical Analyst, Brian Slocum, who will testify generally about the methods used to recover the text messages from the cellular telephones seized from the cooperating co-conspirator, RC, as well as the cellular telephones seized from the vehicle that the Defendant drove on the night of his arrest.

In addition, the government anticipates eliciting some general information related to drug trafficking organizations through the testimony of the undercover agent or other law enforcement agents who investigated RC and the defendant's drug-dealing activities. While the government will not seek to introduce "expert" testimony through these witnesses, these witnesses have personal knowledge on many of these same topics.  They may testify to these issues to explain *why* they took certain investigative steps, what they understood certain terms to mean, or, in the case of the undercover agent, took certain actions and made specific statements during the undercover operation.  To the extent this testimony veers into expert terrain, the government has proposed the dual role instruction. *See* 9th Cir. Instruction 4.14A; *see also United States v. Vera*, 770 F.3d 1232, 1246 (9th Cir. 2014); *United States v. Tran*, 706 Fed. Appx. 406 (9th Cir. 2017).

**K.    Exclusion of Witnesses**

Pursuant to Rule 615 of the Federal Rules of Evidence, the government respectfully requests that witnesses be excluded from the courtroom, with the exception of DEA Task Force Officer Ryan Hamilton, who is case agent. *United States v. Thomas*, 835 F.2d 219, 222-23 (9th Cir. 1987); *see also United States v. Machor*, 879 F.2d 945, 953-54 (1st Cir. 1989).

## V.    PENDING MOTIONS

The defendant filed six pretrial motions on February 6, 2018 (Dkts. 17-22), including a motion to suppress evidence seized during a search of the defendant's residence and a car parked at the residence (Dkt. 20) and a motion for a voluntariness hearing (Dkt. 22).  The government filed a consolidated response on February 15, 2018 (Dkt. 28).  Also on February 15, defendant filed an additional motion seeking to suppress

GOVERNMENT'S TRIAL BRIEF - 13
*U.S. v. Borroel-Lopez*, CR17-322RAJ

UNITED STATES ATTORNEY
700 STEWART STREET, SUITE 5220
SEATTLE, WASHINGTON 98101
(206) 553-7970

evidence seized from the defendant's GMC Yukon when he was stopped and arrested at the Taco Bell in Kent on December 11, 2017 (Dkt 27).  The government's response to that motion is due on or before February 27, 2018, and a hearing on both suppression motions and the voluntariness motion is set for February 28, 2018.

As noted above, the government does not intend to elicit testimony about, or offer evidence seized from, the searches of defendant's residence, or the Chevrolet Silverado parked there.  *See* n.1*, infra*.  Accordingly, defendant's first suppression motion (Dkt. 20) is moot.  Defendant did not specify which of his post-arrest statements, if any, he believes were involuntary.  To the extent he challenges statements made during or after the searches of his residence and Silverado, the government also will not elicit evidence of those statements, and that motion is moot as well.

## VI.    CONCLUSION.

The United States is not aware of other legal issues that are likely to arise during the course of this trial.  If other issues do arise, the government requests the opportunity to address those issues by way of a supplemental brief.

DATED this 23rd day of February, 2018.

Respectfully submitted,

By    */s/ Benjamin T. Diggs*
       BENJAMIN T. DIGGS
       Special Assistant United States Attorney
       United States Attorney's Office
       700 Stewart Street, Suite 5220
       Seattle, WA 98101-1271
       Telephone: (206) 553-2275
       E-mail: Benjamin.Diggs@usdoj.gov

GOVERNMENT'S TRIAL BRIEF - 14
*U.S. v. Borroel-Lopez*, CR17-322RAJ

UNITED STATES ATTORNEY
700 STEWART STREET, SUITE 5220
SEATTLE, WASHINGTON 98101
(206) 553-7970

1

*/s/ Katheryn Kim Frierson*_____

2
KATHERYN KIM FRIERSON

3
Assistant United States Attorney
United States Attorney's Office

4
700 Stewart Street, Suite 5220
Seattle, WA 98101-1271

5
Telephone: (206) 553-4737

6
E-mail: Katheryn.K.Frierson@usdoj.gov

7

8

9

10

11

12

13
**CERTIFICATE OF SERVICE**

14
I hereby certify that on February 23, 2018, I electronically filed the foregoing with

15
the Clerk of the Court using the CM/ECF system which will send notification of such

16
filing to the attorney(s) of record for the defendant.

17

18
*s/ Melissa Frank*_____

19
MELISSA FRANK
Legal Assistant

20
United States Attorney's Office

21
700 Stewart Street, Suite 5220
Seattle, Washington 98101-1271

22
Phone: (206) 553-4215

23
FAX:   (206) 553-0755
E-mail: melissa.frank@usdoj.gov

24

25

26

27

28

GOVERNMENT'S TRIAL BRIEF - 15
*U.S. v. Borroel-Lopez*, CR17-322RAJ

UNITED STATES ATTORNEY
700 STEWART STREET, SUITE 5220
SEATTLE, WASHINGTON 98101
(206) 553-7970